COMPAÑÍA INDUSTRIAL DE SANTURCE, PEDRO BOLÍVAR, LTD., PLAINTIFF AND APPELLANT, *v.* SÁNCHEZ, DEFENDANT AND RESPONDENT.

APPEAL from the District Court of San Juan, Section 1, in an Action of Debt.

No. 1132.—Decided July 20, 1914.

SURETY—CONTRACT.—The defendant wrote the plaintiff a letter reading as follows: "I have the pleasure of recommending to you my friend Marcelino

Barreto, who will purchase some lumber from you with which to build a house in Santurce and it seems to me that you will be able to give him the lowest prices because he is entirely reliable personally and, besides, in recommending him to you I may be responsible to you for everything he may purchase.'' It was held that the said letter did not constitute a surety contract *per se* and that the defendant was not liable for the value of the lumber purchased by the said Barreto, especially when it is taken into account that the letter referred only to one house, whereas, according to the evidence, Barreto built several houses with the lumber which he purchased. Besides, Barreto made various payments on account of the lumber purchased and it may be that the value of the lumber which he obtained for the construction of the first house was paid for in full.

The facts are stated in the opinion.

*Mr. Damián Monserrat, Jr.,* for the appellant.

*Mr. Eugenio Benítez Castaño* for the respondent.

Mr. Justice del Toro delivered the opinion of the court.

This is an appeal from a judgment of the District Court of San Juan, Section 1, dismissing a certain action of debt.

Summarized, the allegations of the complaint are as follows: 1. That the plaintiffs are a commercial partnership doing business in San Juan and the defendant is a merchant residing in Carolina; 2. That on September 5, 1910, the defendant signed and addressed the following letter to the plaintiffs:

"Carolina, P. R., *September 5, 1910.*

"Compañía Industrial de Santurce,

"*San Juan, P. R.*

"My Dear Sirs and Friends: I have the pleasure of recommending to you my friend Marcelino Barretó, who will purchase some lumber from you with which to build a house in Santurce and it seems to me that you will be able to give him the lowest prices because he is entirely reliable personally and, besides, in recommending him to you I may be responsible to you for everything he may purchase.

"Always at your orders,

"Yours very truly, etc.,

"F. Sánchez Osorio."

3. That the plaintiffs accepted the guaranty and sent Marcelino Barreto several lots of lumber to the value of $2,942.40;

4. That in June, 1911, the defendant was notified of the amount of the said account and he answered that thereafter nothing more should be sold to Barreto under his guaranty; 5. That the plaintiffs brought an action against Barreto to recover the $2,942.40 due and obtained a judgment which they could not realize on because Barreto had no property, and that the defendant has also failed to satisfy said judgment although requested to do so; 6. That the defendant has failed to comply with the obligation which he contracted in his letter of September 5, 1910.

The complaint concludes with the prayer that judgment be rendered against the defendant for the sum of $2,942.40, together with lawful interest, costs, disbursements, and an attorney's fee.

The defendant answered denying the first allegation of the complaint, admitting the genuineness of the letter transcribed in the second allegation, admitting that the plaintiffs had sent lumber to Barreto, but alleging that they had made several shipments amounting to $4,792.47, instead of $2,942.40, and that Barreto had made several payments on account—one of $1,000 on December 13, 1910, another of $500 on January 5, 1911, and another of $350 on April 17, 1911. The answer also denied that the plaintiffs accepted the guaranty of the defendant and alleged that the defendant had never expressly offered such security or intended to do so. It denied allegations 4, 5, and 6 of the complaint and alleged the following as new matter: (a) That in writing the letter transcribed in the second allegation of the complaint he only intended to recommend a person whom he supposed to be worthy of credit and that the plaintiffs never asked the defendant whether he made himself surety for M. Barreto; (b) that as soon as the plaintiffs wrote to the defendant holding him as surety the defendant protested, and (c) that the letter of September 5, 1910, referred to the necessity which Barreto was under of building one house while the plaintiffs not only furnished him

lumber to construct one house, but furnished him lumber to build more than six houses.

The answer concludes with the prayer that the court render judgment in favor of the defendant, with costs and attorney's fees against the plaintiffs.

At the trial both parties introduced their evidence and on February 10, 1914, the district court rendered the judgment formerly referred to.

The evidence of the plaintiffs consisted of the letter transcribed in the complaint, of various other letters addressed by the plaintiffs to the defendant and of the testimony of Pedro Bolívar, managing partner of the plaintiffs, Rodrigo Rolán, general attorney in fact of the plaintiffs, Romualdo Tolmo, an employee of the plaintiffs, Marcelino Barreto, Celestino Marrero, secretary of the trial court, and Damián Monserrat, Jr., attorney for the plaintiffs, and of the record of the action brought by the plaintiffs against Barreto to recover the same amount claimed in this action. The evidence of the defendant consisted of the testimony of the defendant himself and of various letters written by him to the plaintiffs.

We agree with the trial court that the principal question involved in this case is the legal signification of the letter addressed by the defendant to the plaintiffs and transcribed in the complaint. We agree, also, with the following reasoning of said trial court and with its citations from Commentator Manresa. Judge Córdova Dávila expresses himself as follows:

"In our opinion, the letter quoted is not sufficient to constitute a surety obligation nor can it be construed as such. From a grammatical point of view, the language cited cannot be held to make defendant Sánchez Osorio liable as surety or guarantor. The word 'may' is facultative. It indicates the power or the faculty to do something; not the necessity or duty of doing it. It expresses no obligation whatever. It does not imply, either categorically or indirectly, an agreement to perform a specified duty.

"From a juridical standpoint, the conclusion cannot be reached that the aforesaid letter constitutes an agreement as surety. It is elementary that consent, which is an essential requisite to every agreement, may be given expressly or by implication. This is the general rule in the broad and very vast field of business transactions; but precisely on account of its special and onerous character, a surety contract is an exception to the general rule. In it tacit consent is not binding, but only express, explicit, unequivocal and categorical consent. Consent cannot be presumed or inferred from more or less reasonable deductions. It should be given in a clear and positive manner and be express and conclusive, pursuant to the provisions of section 1728 of our Civil Code. According to that section, surety is not presumed; it must be express and cannot be extended further than that specified therein. Let us see what the distinguished commentator, Manresa, says in construing article 1827 of the Spanish Civil Code, which is the same as section 1728 of the Revised Civil Code:

" 'In fact, although surety is an accessory obligation of the principal obligation, it is none the less a special obligation distinct from that of the debtor which, therefore, presupposes and requires the intention of the person contracting it to bind himself to comply with what the debtor was under obligation to do in the event of the latter's default. And to such a point is the said requisite necessary that without the volition of the surety there is no consent and this is the only element which can give life to the juridical obligation as surety.

" 'For this reason all codes, like our own, contain the provision that surety is not presumed or that it must be express, or both, as provided in the article which we are considering. But what was the intention of the legislators in making this provision? In what sense must it be understood? That is the most important question of those suggested by the meaning of the said article.

" 'Consent or intention to contract an obligation is always a necessary requisite to every contractual obligation, but, according to the general principles which we have considered in studying the subject of obligations derived from intention and especially the theory of consent as an essential requisite to contracts, such intention may be shown expressly by words which demonstrate the same directly and clearly or in a manner implied from acts which reveal the intention to be bound.

" 'And in view of this double means of expression, which really appears to be opposed to the wording of the provision contained in

this article, a doubt arises as to whether on this point the legislators have departed from the general principles indicated, requiring a special manner for the determination or expression of the desire to contract an obligation.

" 'In our opinion the doubt must be decided in the affirmative, for what the statute seeks to provide is that surety must be constituted expressly, the intention and will to contract the obligation being shown in a direct and unequivocal manner and excluding, therefore, the tacit form of its expression. For that reason it is not only provided that surety is not presumed but also that *it must be express.*

" 'The reasons for that special provision are derived, as we have stated, from the very nature of surety. By its nature it is a gratuitous obligation, although said gratuity is not essential, as we have shown, and is ordinarily contracted without remuneration or recompense and with no other correlative obligation in favor of the surety, who, in many instances, finds himself under the cruel necessity of paying debts of others from which he derives no benefit and is without an efficient remedy against the insolvent debtor. Laurent, in commenting upon the hazardous nature of surety, cites the well-known proverb, "The surety pays the debt," and the legislators, with this idea in mind, intended that in order that the surety may have effect not only must there exist the certainty that the surety really intended to assume the obligation, but also that it be evident that in doing so he acted with a knowledge of what he was doing in order thus to avoid that a person who through an unreflecting feeling of affection or compassion may be disposed to go surety, may not be easily led by that first generous impulse, but that in binding himself he do so in a careful and thoughtful manner, giving him time to think the matter over so that the expression of his volition may be a sufficient guaranty of his deliberate intention to bind himself to fulfil the obligation undertaken in case the principal should default.' 12 Manresa, Spanish Civil Code, 226.' "

The letter in question is so worded as apparently to invite an explanation to concrete and fix the responsibility of its writer, and not only is there nothing to show that the explanation was requested but the receipt of the letter does not even appear to have been acknowledged. Besides, even in case it could be held that the letter should be construed as a real surety contract, it would still be necessary to conclude that the complaint was properly dismissed in view of the evidence.

Only one house is spoken of in the letter and the evidence shows that Barreto was furnished lumber by the plaintiffs for the construction of several houses during quite a long time, with the knowledge of the plaintiffs. Barreto's account current with the plaintiffs amounts to $4,692.47 and Barreto paid them $1,850 on account. This might show, perhaps, as held by the trial court, that the price of the lumber for the house first built, which was that to which the defendant undoubtedly made reference, has been paid already, and it is well settled that under the law (section 1728 of the Revised Civil Code) the security cannot be extended further than that specified therein.

In view of the foregoing, the appeal should be dismissed and the judgment appealed from affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.